# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JAMES NEUMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 07-CV-0362-MJR |
| | ) | |
| UNITED STATES OF AMERICA, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

**REAGAN, District Judge:**

### A. Introduction and Background

On March 14, 2007, Neuman filed suit in Illinois state court against a large number of defendants, including Karen McNaught, Judge Brian Nemenoff, the State of Illinois, and the Office of the Attorney General for the State of Illinois (Doc. 2). The case was removed to federal court in the Central District of Illinois on May 1, 2007. Because each of the federal defendants is employed in the Central District of Illinois, all judges in that district recused themselves, and the case was transferred to the Southern District of Illinois on May 17, 2007. The undersigned Judge was then randomly assigned to the case.

On June 8, 2007, Karen McNaught filed a motion to dismiss all claims against her under **FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)** (Doc. 28). On September 14, 2007, Judge Nemenoff moved to dismiss Neuman's claims against him (Doc. 70). Finding that the complaint failed to set forth any fact that would permit this Court to infer that Neuman stated a plausible claim for relief against either, the Court dismissed McNaught and Judge Nemenoff without prejudice (Docs. 148 & 151).

Having received permission from the Court, Neuman filed an amended complaint in the above-captioned action on March 2, 2008 (Doc. 214). Therein, Neuman raises forty claims against approximately thirty defendants, including McNaught, Judge Nemenoff, the State of Illinois, and the Office of the Attorney General.

These defendants now move this Court to dismiss Neuman's claims against them under **FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) and 12(b)(6)** (Doc. 232). For the reasons stated below, the Court hereby **GRANTS** defendants' motion to dismiss.

### B. Analysis

1. Neuman's Claims Against McNaught and Judge Nemenoff

Dismissal is warranted under **Rule 12(b)(6)** if the complaint fails to set forth "enough facts to state a claim to relief that is plausible on its face." ***Bell Atlantic Corp. v. Twombly*, -- U.S. --, 127 S. Ct. 1955, 1965 (2007);** ***EEOC v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007).** In making this assessment, the District Court accepts as true all well-pled factual allegations and draws all reasonable inferences in Plaintiff's favor. ***St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 625 (7th Cir. 2007).**

Rule 8 requires "a short and plain statement of the claim showing that the pleader is entitled to relief." This pleading standard requires that plaintiffs provide defendants with fair notice of their claim and the grounds upon which it rests. ***See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).** In *Bell Atlantic*, the Supreme Court explained:

> a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [but] a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . .

***Bell Atlantic*, 127 S.Ct. at 1964–65 (internal citations omitted).** With respect to the plaintiff's allegation of conspiracy, the Court explained that Rule 8 requires a complaint to include "enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement," and that failure to do so may result in dismissal. ***Id.* at 1965.** Ultimately, the Court upheld dismissal of the complaint because a showing of parallel conduct among telecommunications providers, without any other facts suggesting the existence of an illegal agreement, did not fulfill the requirements of Rule 8. ***Id.* at 1974 ("Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed.").**

With respect to Neuman's first complaint, the Court previously dismissed both McNaught and Judge Nemenoff because Neuman failed to set forth any fact that would permit the Court to infer that there is a plausible claim for relief against either. The same is true of Neuman's amended complaint, as it relates essentially the same broad allegations without any factual support that could reveal evidence of a conspiracy involving either defendant.

Neuman's complaint alleges that he was denied entrance into the Peoria County Courthouse. Neuman alleges that he approached the courthouse to conduct work on a pending lawsuit (Doc. 214, p. 14). As he entered, Officer Terry Short asked, "Where do you think you are going?" (Doc. 214, p. 14). Officer Short then accessed his radio and stated, "The guy that we have pictures of is attempting to enter the building." (Doc. 214, p. 15). At that point, Neuman alleges that he "knew immediately that they intended to deny [him] access to the courthouse" (Doc. 214, p. 17). Neuman then voluntarily left the building. He alleges that he did so because Officer Short's words and actions made him fear that he would be retaliated against, assaulted, and possibly killed (Doc. 214, p. 17). Neuman alleges that these facts indicate that security officers and others working

in the courthouse, including McNaught and Judge Nemenoff, had entered into a conspiracy against him.

How Neuman makes this jump is not clear, as the complaint fails to allege any facts specific to McNaught or Judge Nemenoff. As far as the Court can tell, Judge Nemenoff's only relation to Neuman is that he was a defendant in one of the cases Neuman had filed, and McNaught's only relation to him is that she was defense counsel in one of Neuman's cases (See Docs. 233 & 252). There is absolutely nothing, however, to even remotely connect either to the alleged conspiracy to prevent Neuman from accessing the courthouse. Neither McNaught nor Judge Nemenoff were involved in the underlying facts—Officer Short is the only individual who had any actual contact with Neumann. The mere fact that Officer Short referred to Neuman on his radio to other officers does not support the allegation that McNaught or Judge Nemenoff were somehow involved in a conspiracy against him.

Neuman's claims that Judge Nemenoff and McNaught knew of the alleged conspiracy, participated in it, and failed to stop it amount to pure speculation without factual support. The basis for these allegations, according to Neuman, is that "[t]here had to be a conspiracy against the plaintiff while his picture was being shown to the employees at the courthouse" (Doc. 252). However, he offers nothing to support his claim that McNaught and Judge Nemenoff were involved.

In response to the motion to dismiss, Neuman essentially argues that McNaught and Judge Nemenoff could have been involved in the alleged conspiracy, as he believes they wanted to hinder his ability to prosecute his pending lawsuits. Again, however, he offers no factual support for these assertions, and instead engages in leaps of logic that simply fail to state a claim upon which

relief can be granted. For instance, Neuman argues:

> I truly believe that Brian Nemenoff knew about the conspiracy and pictures of the plaintiff being used to immediately recognize the plaintiff. I believe that Karen McNaught may have knew about the conspiracy and pictures of the plaintiff being passed around to employees at the courthouse to immediately recognize the plaintiff so he could be retaliated against. The defendant's conspiracy, intimidation, retaliation, and obstruction of justice was meant to directly help Brian Nemenoff and his attorney Karen McNaught in the plaintiff['s] previous lawsuits.

As such, the allegations against McNaught are entirely speculative, conclusory, and without support. Even accepting as true all well-pled factual allegations and drawing all reasonable inferences in Plaintiff's favor, such broad assertions are not sufficient under the provisions of **Rule 8** and ***Bell Atlantic***. Because the complaint fails to set forth enough facts to state a plausible claim to relief, the Court **GRANTS** defendant's motion to dismiss all claims against McNaught and Judge Nemenoff under **Rule 12(b)(6)**.

2. Neuman's Claims Against the State of Illinois and the Office of the Attorney General

Neuman also alleges that the State of Illinois and the Office of the Attorney General are liable as the employers of various defendants. The defendants argue that Neuman's claims must be dismissed for a variety of reasons. First, they argue that Neuman bases his claims upon a variety of statutes that either do not provide for a private right of action or are wholly inapplicable to the case at hand. Where the cited statutes do permit a right of recovery, defendants argue that the state's sovereign immunity under the Eleventh Amendment bars Neuman's claims. Finally, defendants argue that they are not subject to suit under 42 U.S.C. §§ 1983, 1985, and 1986.

At the outset, the Court notes that Counts 30 through 38 do not state any claim whatsoever against the state defendants. The facts pled therein only refer to Neuman's claims

against the federal defendants. As such, Neuman seeks no recovery against the state defendants in Counts 30 through 38.

As for the rest of Neuman's complaint, it is essentially a repetition of the same facts under different headings in which Neuman alleges a right to recovery under various statutes. The vast majority of these statutes provide no private right of action. For instance, Neuman repeatedly cites Title 18 of the United States Code, which constitutes the federal criminal code. Neuman also repeatedly cites Chapter 720 of the Illinois Code, which provides Illinois's criminal statutes. No private right of action exists under any of these criminal laws.

Neuman also cites other federal laws, including various sections of Title 42 of the United States Code. Again, the vast majority of these statutes either have no application to the instant action, or they provide no private right of action. For instance, Neuman cites **42 U.S.C. § 2000b**, which permits the Attorney General to institute various civil actions on behalf of certain individuals. He also cites **42 U.S.C. § 1997d**, which prohibits retaliation against individuals who report conditions that may violate the rights of an institutionalized person. Additionally, Neuman cites **42 U.S.C. §§ 1887, 1981, 1982, 1987, 1989, 1990, 1991, 1995, and 2000d**, which either provide no private right of action, have no cognizable relevance whatsoever to this case, or both. Accordingly, Neuman's claims must be dismissed insofar as they rely on these statutes for relief under **Rule 12(b)(6)**.

However, Neuman also relies on various federal statutes that do permit a private right of action. For instance, Neuman cites **42 U.S.C. §§ 1983, 1985, and 1986** as the basis for certain counts. Additionally, Neuman claims that he can recover under the Illinois Human Rights Act. The State of Illinois and the Office of the Attorney General claim that Neuman's claims under these

statutes are barred by state sovereign immunity and therefore must be dismissed for lack of subject matter jurisdiction under **Rule 12(b)(1)**.

### a. Neuman's Claims Under Federal Law

The Eleventh Amendment recognizes that each state is a sovereign entity, and "it is inherent in the nature of sovereignty not to be amenable to the suit of an individual without consent." *Hans v. Louisiana*, **134 U.S. 1, 13 (1890).** By its express terms, the Eleventh Amendment bars federal courts from hearing suits against a state brought by citizens of any other state. **U.S. CONST. AMEND. XI.**[1] Additionally, the United States Supreme Court has consistently held that unconsenting states are immune from suits brought in federal court by their own citizens as well as those brought by citizens of other states. *Ameritech Corp. v. McCann*, **297 F.3d 583, 585 (7th Cir. 2002) (citing** *Edelman v. Jordan*, **415 U.S. 651, 662-63 (1974)).**

Eleventh Amendment immunity applies to injunctive suits against the states as well as those for damages. *Id.* The Eleventh Amendment also protects state agencies and state officials from such actions. *See Seminole Tribe of Florida v. Florida*, **517 U.S. 44, 73-76 (1996);** *Kentucky v. Graham*, **473 U.S. 159, 169 (1985);** *Pennhurst State School & Hosp. v. Halderman*, **465 U.S. 89, 100 (1984).** *See also Illinois Assoc. of Mortgage Brokers v. Office of Banks and Real Estate*, **308 F.3d 762, 765-66 (7th Cir. 2002);** *Ryan v. Illinois Dep't of Children & Family Servs.*, **185 F.3d 751, 758 (7th Cir. 1999) (explaining that as an agency of the state, Illinois Department of Children & Family Services was entitled to Eleventh Amendment immunity against § 1983 claims).**

---

[1] The Eleventh Amendment states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

There are narrow circumstances in which a suit can proceed against a state, its agencies, or officials. For instance, a state can waive the protections of the Eleventh Amendment and consent to be sued in federal court. *Ameritech*, **297 F.3d at 585.** Additionally, the United States Congress can use its enforcement powers under the Fourteenth Amendment to abrogate a state's Eleventh Amendment immunity. *Id.* Furthermore, a suit for prospective injunctive relief (though not money damages) may proceed against state officials in limited circumstances, as outlined in ***Ex Parte Young***. **209 U.S. 124 (1908);** *see Ameritech*, **297 F.3d at 585.**

Neuman's suit against the State of Illinois and the Office of the Attorney General does not fall within any of the Eleventh Amendment's exceptions. These defendants have neither consented to this suit, nor have they waived the immunity they enjoy under the Eleventh Amendment. Furthermore, Neuman fails to show that Congress has validly abrogated state sovereign immunity in any statute pertaining to the federal claims he asserts in his complaint. It is well-established that Congress's enactment of 42 U.S.C. § 1983 did not "override the traditional sovereign immunity of the States." ***Quern v. Jordan*, 440 U.S. 334, 341 (1979).** *Accord **Ryan v. Illinois Dept. Fo Children and Family Services*, 185 F.3d 751, 758 (7th Cir. 1999); *Kroll v. Board of Trustees of University of Illinois*, 934 F.3d 904, 909 (7th Cir. 1991),** *cert. denied*, **502 U.S. 941 (1991).** The Eleventh Amendment likewise bars suits for damages against the state and its agencies under §§ 1985 and 1986. *See **Keri v. Board of Trustees of Purdue Univ.*, 458 F.3d 620, 640-41 (7th Cir. 2006); *Harker v. Univ. Professionals of Illinois*, 1999 WL 38102, at \*2 (7th Cir. 1999) (unpublished).**

Additionally, Neuman cannot proceed with his claims for prospective injunctive relief, because the doctrine of ***Ex parte Young*** applies only against state officials. ***Puerto Rico***

*Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 ("The doctrine of *Ex parte Young* . . . has no application in suits against the States and their agencies, which are barred regardless of the relief sought."); *Peirick v. Indiana Univ.–Purdue Univ. Indianapolis Athletics Dep't*, 510 F.3d 681, 695–97 (7th Cir. 2007) (finding that plaintiff's claims for prospective relief were barred because she brought suit against state agencies rather than state officials). Here, Neuman sues the State of Illinois and the Office of the Attorney General, an agency of the state—two parties which enjoy sovereign immunity.

Therefore, the Court lacks subject matter jurisdiction over Neuman's federal claims, as the defendants are immune from suit. Thus, Neuman's claims under federal law must be dismissed under **Rule 12(b)(1)** insofar as they are directed against the State of Illinois and the Office of the Attorney General for the State of Illinois.

### b. Neuman's Claims Under State Law

Neuman also raises several claims against the State of Illinois and the Office of the Attorney General under the Illinois Human Rights Act. As "state rules of immunity are binding in federal court with respect to state causes of action," Neuman cannot proceed on his state law claims against the State of Illinois or the Office of the Attorney General unless Illinois's immunity rules would permit an Illinois court to hear his claims. *See Omosegbon v. Wells*, 335 F.3d 668, 673 (7th Cir. 2003) (examining whether Indiana's sovereign immunity rules prohibited plaintiff from proceeding in a contract action). In other words, Neuman must point to a statute or rule that shows that the Illinois legislature has waived its sovereign immunity.

The State Lawsuit Immunity Act, **745 ILCS 5/1**, specifically provides that

> [e]xcept as provided in the Illinois Public Labor Relations Act, the
> Court of Claims Act, the State Officials and Employees Ethics Act,

> Section 1.5 of this Act, and, except as provided in and to the extent
> provided in the Clean Coal FutureGen for Illinois Act, the State of
> Illinois shall not be made a defendant or party in any court.

By its terms, the statute indicates that the State of Illinois has not consented to suit in its courts under the Human Rights Act. Also, Neuman clearly does not fall under any of the exceptions in **745 ILCS 5/1.5**, which permits state employees to bring certain suits against the State of Illinois. And because the Office of the Attorney General is a department of the state, state sovereign immunity bars Neuman's claims against it to the same extent as it bars his claims against the State of Illinois. *Foley v. American Federation of State, County, & Municipal Employees, Council 31, Local No. 2258*, 556 N.E.2d 581, 585-86 (Ill.App. 1990) (**"[A] suit against a department of the State is a suit against the State."**).

Additionally, with limited exceptions, the Human Rights Act itself confers exclusive jurisdiction to hear civil rights claims upon the Human Rights Commission. *Weatherly v. Illinois Human Rights Comm'n*, 788 N.E.2d 1175, 1178 (Ill.App.Ct. 2003). None of the exceptions to this rule apply in this particular case. *Id.*; *see Castaneda v. Illinois Human Rights Comm'n*, 547 N.E.2d 437 (Ill. 1989) (**outlining the narrow circumstances in which exhaustion of one's administrative remedies through the Commission is not required**). Moreover, the statute specifically provides that "[e]xcept as otherwise provided by law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act." **775 ILCS 5/8-111(D).**

It is abundantly clear that the State of Illinois and the Office of the Attorney General have not consented to suit or otherwise waived sovereign immunity. As a result, Neuman's claims under the Human Rights Act against the State of Illinois and the Office of the Attorney General must

be dismissed under **Rule 12(b)(1)**. The Court need not address defendants' other arguments, as all claims against these defendants are now dismissed.

### C. Conclusion

Accordingly, the Court hereby **GRANTS** the defendants' motion to dismiss (Doc. 232) and **DISMISSES** all claims against Judge Nemenoff, Karen McNaught, the State of Illinois, and the Office of the Attorney General for the State of Illinois.

**IT IS SO ORDERED.**

**DATED this 7th day of August 2008.**

**s/ Michael J. Reagan**
**MICHAEL J. REAGAN**
**United States District Judge**